UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LEONOR ENCALARDE                              CIVIL ACTION

VERSUS                                        NO: 09-4129

NEW ORLEANS CENTER FOR                        SECTION: R(1)
CREATIVE ARTS/RIVERFRONT

**ORDER AND REASONS**

Before the Court is defendant New Orleans Center for Creative Arts/Riverfront (NOCCA)'s partial motion for judgment on the pleadings. For the following reasons, the Court GRANTS NOCCA's motion on Encalarde's federal claims, and remands Encalarde's state law claims.

**I.  BACKGROUND**

Plaintiff Leonor Encalarde alleges that she was subject to racial discrimination in the terms and conditions of her employment and ultimately forced to resign her employment with NOCCA in violation of the United States Constitution, 42 U.S.C. §§ 1981 and 1983, and Louisiana state law. Encalarde sued NOCCA for damages in Orleans Parish Civil District Court on February

19, 2009,[1] and NOCCA removed the action to this Court on June 17, 2009.[2] Encalarde's original complaint stated claims against only NOCCA; it did not name any employees.[3] On August 30, 2009, Encalarde moved to amend her complaint to state claims against four NOCCA employees in their official capacities.[4] On August 31, 2009, NOCCA opposed the motion as futile on grounds of state sovereign immunity.[5] The same day, Encalarde moved to "correct" her motion to amend to state claims against the four NOCCA employees in their individual capacities.[6] Encalarde's motions to amend were heard by a Magistrate Judge, who issued a report and recommendation denying the motions because Encalarde's proposed claims had prescribed and did not relate back to her original complaint.[7] The court adopted the Magistrate Judge's report and recommendation on November 30, 2009.

NOCCA now moves for partial judgment on the pleadings with respect to Encalarde's federal claims.

---

[1]  (R. 1.)

[2]  (*Id.*)

[3]  (*Id.*)

[4]  (R. 13.)

[5]  (R. 14.)

[6]  (R. 16.)

[7]  (R. 29.)

2

**II. STANDARD**

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).[8] To survive a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[9] A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] The factual allegations must "raise a reasonable expectation that discovery will reveal evidence" of liability.[11] The Court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party."[12] The court is not, however, bound to accept as true legal conclusions couched as factual allegations.[13] In determining whether to grant a motion to dismiss, a district

---

[8] *Doe v. MySpace, Inc.*, 528 F.3 413, 418 (5th Cir. 2008).

[9] *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[10] *Iqbal*, 129 S.Ct. at 1949.

[11] *Twombly*, 550 U.S. at 556.

[12] *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (2008).

[13] *Iqbal*, 129 S.Ct. at 1949-50.

court generally may not "go outside the complaint."[14]  A district court may, however, consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim.[15]

**III. DISCUSSION**

**A.   Federal Claims**

It is established that "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted,"[16] and "[t]he same can be said of the various arms of state government."[17]  It is also established that § 1981 does not provide a separate cause of action against state actors, and that a plaintiff "must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981."[18]  Thus, if NOCCA is an arm of the State of Louisiana,

---

[14]   *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

[15]   *Id.* at 536.

[16]   *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) (same; citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).

[17]   *Cheramie v. Tucker*, 493 F.2d 586, 587-88 (5th Cir. 1974), *cert. denied*, 419 U.S. 868 (1974).

[18]   *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 462-63 (5th Cir. 2001) (expressly rejecting argument that 1991 amendments to § 1981 created independent cause of action against state actors); *Washington v. City of Gulfport, Miss.*, 351 F. App'x 916, 918-19 (5th Cir. 2009) (interpreting *Oden*: "§ 1981

4

Encalarde's § 1981 and § 1983 claims against NOCCA must fail.

In determining whether NOCCA is an arm of the State of Louisiana, the Court considers six factors: (1) whether Louisiana statutes and case law view NOCCA as an arm of the state; (2) the source of NOCCA's funding; (3) the degree of NOCCA's local autonomy; (4) whether NOCCA is concerned primarily with local as opposed to statewide problems; (5) whether NOCCA has the authority to sue and be sued in its own name; and (6) whether NOCCA has the right to hold and use property.[19] No one factor is dispositive, but the second factor is particularly important.[20] The purpose of the factors is to "balance the equities and determine if the suit is really one against the state itself."[21] Furthermore, although these factors generally

---

implicitly created an independent cause of action against *private* actors because no other statute created such a remedy," but "Section 1983 remains the only provision to expressly create a remedy against persons acting under color of state law").

[19] *Clark v. Tarrant County, Tex.*, 798 F.2d 736, 744 (5th Cir. 1986).

[20] *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 327 (5th Cir. 2002).

[21] *Id.; see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 279 (1977) ("The issue here thus turns on whether the Mt. Healthy Board of Education is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend."); *Monnell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, (1978) (holding that "Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies").

5

are used to determine the scope of state sovereign immunity under the Eleventh Amendment, they are also relevant in determining the scope of a "person" subject to § 1983.[22] Because the Court finds that NOCCA is not a "person" within the meaning of § 1983, and because NOCCA does not now raise sovereign immunity as a separate ground for dismissal, the Court need not determine the extent to which NOCCA has waived its sovereign immunity to Encalarde's federal claims by removing them to federal court.[23]

NOCCA is an arm of the State of Louisiana, and Encalarde does not contend otherwise. First, Louisiana law views NOCCA as an arm of the state. NOCCA was expressly established as "an agency of state government in the state Department of Education."[24] The Fifth Circuit has recognized that the

---

[22] *See Will*, 491 U.S. at 66 (stating that "in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it"); *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (recognizing that "arms of the state are not 'persons' under § 1983").

[23] *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 248, 255 (5th Cir. 2005) (holding that removal by state waives sovereign immunity from suits based on federal law claims in federal court, but also concluding that whether state retains separate immunity from liability must be determined according to state law); *Carter v. State of Louisiana ex rel. State Bd. of Dentistry*, Civ. A. No. 02-1244, 2002 WL 1359640, at *1 (E.D. La. June 17, 2002) (observing that "the issue posed by the instant motion is not whether the State is entitled to sovereign immunity by virtue of the Eleventh Amendment, but whether the State is a person for the purpose of the § 1983 claims").

[24] La. Rev. Stat. Ann. § 17:1970.23(A).

Department of Education is part of the State of Louisiana for purposes of the Eleventh Amendment.[25] NOCCA is exempted from the control of local education boards.[26]

Second, NOCCA receives its operational funding from the State of Louisiana. Under state law, funding for NOCCA's operations and programs "shall come from monies appropriated therefor by the legislature."[27] In 2010, the Louisiana legislature in fact appropriated $4,889,705 for NOCCA's operations.[28] NOCCA is operated in a facility owned by the state on land leased to the state,[29] and NOCCA's employees are "employees of the state."[30] Although NOCCA is permitted to raise funds from federal or private sources,[31] fluctuating local funds do not overcome the fact that NOCCA depends on "base funding"

---

[25] *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 274 (5th Cir. 2005) (finding that Department of Education waived sovereign immunity); *see also Perez*, 307 F.3d at 327-28 (finding that administrative subdivision of Texas Education Agency arm of State of Texas).

[26] La. Rev. Stat. Ann. § 17:1970.23(A).

[27] La. Rev. Stat. Ann. § 17:1970.27(A).

[28] *See* House Bill No. 1, Regular Session, 2010, Schedule 19 - Special Schools and Commissions (available at http://www.legis.state.la.us (click "Session Info"; then "2010 Regular Legislative Session"; then search "HB_1"; then click "Text-Current"; then see pages 229, 279)).

[29] La. Rev. Stat. Ann. § 17:1970.23(A).

[30] La. Rev. Stat. Ann. § 17:1970.26(A)(1).

[31] La. Rev. Stat. Ann. § 17:1970.27(B).

from the state for its operational expenses.[32] Moreover, because NOCCA was created as an "agency" of the State of Louisiana, a judgment rendered against NOCCA would be payable from funds appropriated by the Louisiana legislature.[33]

Third, NOCCA has limited local autonomy. NOCCA is not subject to the control of local education boards.[34] NOCCA is instead governed and managed by a thirteen-member board of directors, nine of whom are appointed by the governor of Louisiana and two of whom serve in the Louisiana state legislature.[35] Although six of the directors are appointed from among nominees submitted by local authorities, they are nonetheless ultimately selected by the governor.[36] Moreover, if local governing authorities do not submit nominees on a timely basis, the governor may make an appointment of his choice.[37] That two of thirteen directors are appointed by the Orleans

---

[32] *Perez*, 307 F.3d at 329

[33] *Richardson v. Southern Univ.*, 118 F.3d 450, 455 (5th Cir. 1997) (citing La. Const. art. 12, § 10(C) (providing that "[n]o judgment against the state [or] a state agency . . . shall be exigible, payable, or paid except from funds appropriated therefor by the legislature . . . .")).

[34] La. Rev. Stat. Ann. § 17:1970.23(A).

[35] La. Rev. Stat. Ann. § 17:1970.24(B)(1)(b)-(e).

[36] La. Rev. Stat. Ann. § 17:1970.24(B)(1)(c).

[37] La. Rev. Stat. Ann. § 17:1970.24(B)(2)(b)(i).

8

Parish School Board[38] is insufficient to make NOCCA autonomous from the State of Louisiana.[39]

Fourth, NOCCA has state-wide concerns. Although NOCCA is physically located in New Orleans, NOCCA is required by statute to operate "primarily as a regional facility" for qualified students from ten different Louisiana parishes.[40] In creating NOCCA, the Louisiana legislature intended "to enrich the cultural life of *Louisiana*" and "to honor the history and past contribution of the *state* to the creative and performing arts."[41] Although NOCCA's only physical location is in New Orleans, this fact is insufficient to overcome NOCCA's state-wide concerns and benefits.[42]

Fifth, there is no indication in NOCCA's enabling legislation that NOCCA is authorized to sue or be sued in its own name. The Court observes that the State of Louisiana is

---

[38] La. Rev. Stat. Ann. § 17:1970.24(B)(1)(a).

[39] *See Perez*, 307 F.3d at 329 (finding that locally selected board of directors not autonomous because they were "subject to significant supervision" by state department of education); *Richardson*, 118 F.3d at 455 (finding that Southern University's Board of Supervisors has limited autonomy because its members are appointed by governor and approved by Louisiana senate).

[40] La. Rev. Stat. Ann. § 17:1970.23(A).

[41] La. Rev. Stat. Ann. § 17:1970.21 (emphasis added).

[42] *See Richardson*, 118 F.3d at 456 ("That [state school] is only one of many state-funded schools does not deprive it of Eleventh Amendment immunity.").

conducting NOCCA's defense in this matter.

Lastly, although NOCCA's board of directors has authority to purchase property for NOCCA's use, the board's ability to lease NOCCA's property is "subject to approval of the commissioner of administration,"[43] and the board may sell NOCCA's property "only when specifically authorized by law and then only in accordance with the approval of the commissioner of administration."[44] Thus, NOCCA's ability to use and dispose of property is subject to oversight by the Louisiana Division of Administration.[45] The Division of Administration is "a division of the office of the governor"[46] that provides an array of administrative and supervisory services to departments of the State of Louisiana.[47] In any event, even if NOCCA had unrestricted authority to sue and be sued and to use and dispose of property, which it does not, this would not prevent the Court from finding that NOCCA is an arm of the State of Louisiana.[48]

---

[43] La. Rev. Stat. Ann. § 17:1970.24(E)(2)(b)-(d).

[44] La. Rev. Stat. Ann. § 17:1970.24(E)(2)

[45] *See Perez*, 307 F.3d at 329, 331 (observing that education service center's right to hold and use property is subject to approval by Texas Commissioner of Education).

[46] La. Rev. Stat. Ann. § 39:1.

[47] La. Rev. Stat. Ann. § 39:4(A).

[48] *See Richardson*, 118 F.3d at 456 (finding that "just because Southern's Board can be sued and can hold and use property does not mean that these final two factors weigh against

The Fifth Circuit has repeatedly held that a state university is an arm of the state in which it operates.[49] For the reasons discussed, the Court finds that NOCCA is analogous to the state university found to be an arm of the State of Louisiana in *Richardson v. Southern University*. Like Southern University, NOCCA is considered an agency of the state under state law;[50] NOCCA receives funding directly from the State of Louisiana, and any judgment against NOCCA is likely to be payable from funds appropriated by the Louisiana legislature;[51] NOCCA has limited autonomy because its board of directors is almost entirely appointed by the governor;[52] and NOCCA's educational activities attract students from across Louisiana and "benefit all citizens of Louisiana."[53] Moreover, unlike Southern University, NOCCA

---

a finding of sovereign immunity").

[49] *See, e.g.*, *id.* at 454 (observing that "the majority of decisions concerning the Eleventh Amendment status of state universities have concluded the institutions were arms of the state"); *cf. Stotter*, 508 F.3d at 821 ("This court has also recognized that state universities as arms of the state are not 'persons' under § 1983.");

[50] *See Richardson*, 118 F.3d at 454 (observing that "although Louisiana courts have held that Southern's Board is a separate and distinct legal entity from the State of Louisiana, Southern nonetheless is considered an agency of the State") (citations and quotations omitted).

[51] *See id.*

[52] *See id.* at 455.

[53] *See id.* at 456.

11

does not have express authority to sue and be sued, nor does it have unrestricted authority to use and dispose of property. Thus, like Southern University, NOCCA is an arm of the State of Louisiana.

It is true that Louisiana parish school boards are not considered arms of the State of Louisiana.[54]  NOCCA is not, however, analogous to Louisiana parish school boards.  Unlike parish school boards, NOCCA does not receive funding from local *ad valorem* taxation,[55] and NOCCA's leadership is not selected in local elections.[56]  Further, NOCCA draws students from ten different parishes and thus addresses more than "innately local concerns."[57]  Finally, NOCCA does not have express statutory authorization to sue or be sued in its own capacity,[58] and NOCCA does not have unsupervised authority to use and dispose of

---

[54] *See Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 131-32 (5th Cir. 1986).

[55] *See* La. Const. art. 8, § 13(C) (providing that local funds for the support of elementary and secondary schools shall be derived from local *ad valorem* taxation).

[56] *See* La. Rev. Stat. Ann. § 17:52(A) (providing that parish school board "shall be elected by the qualified voters of each parish police jury ward").

[57] *See Minton*, 803 F.2d at 131-32.

[58] *See* La. Rev. Stat. Ann. §§ 17:51 (providing that parish school boards may sue and be sued); 17:81(H) (providing that parish school boards may "recover for any damage that may be done to the property in their charge").

property.[59]

Because a suit against NOCCA is in reality a suit against the State of Louisiana, NOCCA is not a "person" subject to suit under § 1983. Encalarde's federal claims against NOCCA must be DISMISSED.

**B.    State Claims**

Because the Court has dismissed all of the federal questions that gave it removal jurisdiction, the Court will REMAND Encalarde's state law claims.[60] Remand will promote the interests of judicial economy, convenience, fairness and comity because this case is still at an early stage, and there will be little or no wasted litigation efforts.[61]

---

[59]    *See* La. Rev. Stat. Ann. § 17:81(G), (H) (providing that parish school boards may sell or dispose of property "which for any reason can no longer be used or which is unused and unnecessary or unsuitable as such").

[60]    28 U.S.C. § 1367(c)(3); *Lapides*, 535 U.S. at 618 ("It has also become clear that, in the absence of any viable federal claim, the Federal District Court might well remand [plaintiff's] state-law tort claims against the State to state court.").

[61]    *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992).

## IV. CONCLUSION

For the reasons stated, NOCCA's motion for partial judgment on the pleadings is GRANTED, and it is ORDERED that Encalarde's remaining state law claims be REMANDED to Orleans Parish Civil District Court.

New Orleans, Louisiana, this 19th day of July, 2010.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE